ADA SIGMON, Administratrix of C. A. SIGMON, v. SOUTHERN RAILWAY COMPANY and YADKIN RAILROAD COMPANY.

(Filed 28 November, 1923.)

**1. Carriers—Employer and Employee—Master and Servant—Contributory Negligence—Negligence—Federal Employers' Liability Act—Statutes.**

A locomotive engineer, in inattention to "meet orders," running his train, at a junction, upon another track upon which the coming train was expected, resulting in a collision therewith, is guilty of contributory

negligence in causing the injury that resulted in his death; but in an action for damages against the railroad company therefor, under the Federal Employers' Liability Act, such negligence will not bar recovery, when it is shown that the conductor on the train should have avoided the injury by giving him timely signals to stop the train, and that in his presence the brakeman had signaled to go ahead, which would not have occurred had the conductor and flagman been observant of their duty.

2. **Same—Damages—Comparative Negligence.**

Under the provisions of the Federal Employers' Liability Act, where negligence and contributory negligence are shown, the jury are empowered to apportion the recovery according to the ratio which they find existed between the causal effect of the contributory negligence of the plaintiff's intestate, whose death resulted, and that of the negligence of the defendant.

3. **Actions—Carriers—Principal and Agent—Joint Agencies—Negligence.**

Where railroads are operated by the employees of both, an action against them both will lie for damages resulting from the negligence of the employers.

APPEAL by defendants from *Webb, J.,* at April Term, 1923, of CABARRUS.

This was an action against the Southern Railway Company and the Yadkin Railroad Company under the Federal Employers' Liability Act, for the negligent killing of C. A. Sigmon, engineer, the Yadkin Railroad being owned and operated by the Southern Railway Company.

C. A. Sigmon was an engineer on passenger train No. 3, operated by the defendants between Salisbury and Norwood, N. C. He was killed in a head-on collision between a passenger train and a freight train about one mile east of the Yadkin junction, where the Yadkin Railroad connected with the Southern Railway a short distance west of Salisbury. A "meet order" was issued at Salisbury by the defendants, known as a "double meet" order, fixing the meeting point of the two trains at said Yadkin junction. This order was given to the conductor, O. C. O'Farrell, of the passenger train, and was also given to the engineer. The conductor testified: "I am not sure whether Mr. Sigmon read the order to me or I read it to him. Anyway, I delivered it to him in Mr. Rainey's presence." The engine of the freight train belonged to the Southern Railway Company. The Yadkin junction was about one mile north of where the collision took place. The train left Salisbury on the day in question, 28 September, 1920, and the evidence of the flagman of the passenger train is that the conductor, O'Farrell, told him he had orders to meet the other train at Yadkin junction. At Yadkin junction the fireman "lined the switches" to cross over to the Yadkin Railroad track. The conductor was engaged in taking up the tickets while the

flagman was doing the work. At the junction the train did not stop as required by the meet order but passed on upon the track of the Yadkin Railroad Company, and a mile further on the collision occurred. The jury found upon the issues submitted that the death of the plaintiff's intestate was the result, in whole or in part, of the negligence of the officers, agents and employees of the Southern Railway Company and of the Yadkin Railroad Company, as alleged in the complaint. That the plaintiff's intestate, by his own negligence, contributed to his death; and assessed the damages. From a judgment on the verdict, the defendants appealed.

*Evans & Galbraith, T. W. Maness, and Frank Armfield for plaintiff. Manly, Hendren & Womble and L. C. Caldwell for defendants.*

CLARK, C. J. This case is important, but the controversy lies within a very small compass. There can be no question that the intestate, the engineer, contributed to his death by his negligence in failing to obey the "meet order," which required him to wait at Yadkin junction for the arrival of the freight train coming from Norwood on the Yadkin Railroad. The jury have so found, and there is no question as to the correctness of the verdict, but it was also the duty of the conductor and flagman, when they found that the engineer had gone contrary to orders, to have signaled the train to stop. In this case the flagman testifies that he "forgot it," and the conductor, when asked why he did not give the signal to the engineer to stop, said that he "did not know why he did not." There was no telegraph office or telephone station at the junction, which is about one mile west of the station of the Southern Railway at Salisbury. It is in evidence that, while there was no contract in writing between the Southern and the Yadkin railways, the two roads were operated by the joint employees of the two companies.

From the time the train left the station at Salisbury until the collision occurred, a mile south of the Yadkin junction, the conductor did not give any signal. There were not the required two signals and a short signal to the engineer to stop at the junction. The conductor saw the flagman pull the two signals for the engineer to go ahead. He knew that the signals meant for the engineer to pull his train ahead and go upon the Yadkin track, but he went on taking up his tickets. The next thing the conductor knew was the collision. The train was worked by signals, and the purpose of the cord was to signal the engineer when to start and stop his engine.

The conductor was asked the following question: "When the flagman pulled that cord and started that man on, why did you not pull the cord and stop him?" and he answered, "I don't know why I did not do it."

Without elaborating the evidence, it is sufficient to say that it justified the verdict of the jury that the collision was caused by the negligence of the officers, agents and employees of the defendants. While the intestate was guilty of contributory negligence, there was ample evidence that the collision would not have occurred but for negligence on the part of the conductor and of the flagman.

Under the Federal Employers' Liability Act the jury was empowered to apportion the recovery according to the ratio which they found should exist between the causal effect of the contributory negligence of the engineer and that of the defendants in the conduct of the conductor and flagman.

In the verdict and judgment we find

No error.