12737

YOUNGBLOOD v. SOUTHERN RY. CO. *ET AL.*

(149 S. E., 742)

270

*Messrs. Harley & Blatt,* and *Frank G. Tompkins,* for appellant,

*Messrs. Wolfe & Berry, W. C. Martin, R. C. Holman,* and *Brown & Bush,* for respondent,

September 25, 1929.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

On January 3, 1924, Cleveland J. Youngblood, a train conductor employed by the defendants, received injuries which resulted in his death in a head-on collision between two trains of the defendants at or near Stilton, in Orangeburg County, and in May, 1924, the plaintiff, Mary O. Youngblood, as administratrix of his estate, brought this action for damages, alleging that his death was due to negligence on the part of the defendants. At the time he received the injuries, Youngblood and the defendants were engaged in interstate commerce, and the action was tried under the Federal Employers' Liability Act (45 U. S. C. A., §§ 51–59). The case was first tried at the March, 1925, term of the Common Pleas Court for Barnwell County. At that trial the presiding Judge granted a motion for a directed verdict in favor of the defendants. The plaintiff appealed, and this Court reversed the judgment of the lower Court, remanding the case for a new trial. 137 S. C., 47, 134 S. E., 660.

The case was tried at the June, 1927, term of the Court, before Judge Rice and a jury. The defendants again made a motion for a directed verdict, which was refused, and the jury found for the plaintiff $35,000.00. A motion for a new trial was also refused. The defendants appeal upon six exceptions, which will be disposed of in order.

The first exception imputes error to the trial Judge in refusing defendants' motion for a directed verdict, made upon the grounds:

"(a) That the only reasonable inference to be drawn from the entire testimony is that the death of plaintiff's intestate was caused solely by his own negligence and recklessness.

"(b) That the entire testimony is susceptible of but one reasonable inference, namely, that the danger of the situation resulting in the death of plaintiff's intestate was so obvious that an ordinarily careful person would have observed and appreciated the same, and hence plaintiff's intestate assumed the risks thereof.

"(c) That the only reasonable inference to be drawn from the entire testimony is that the injuries resulting in the death of plaintiff's intestate were directly and proximately caused by said intestate's violation of a meet order, which he had signed for and which had not been fullfilled, superseded, or annulled."

The testimony at the second trial was practically the same as at the first trial, though slightly stronger for the plaintiff. On the first appeal we gave very careful consideration to the questions presented, and held that there was testimony tending to show negligence on the part of defendants, and that, in spite of any contributory negligence on the part of Youngblood, the whole matter should have been submitted to the jury for determination. We see no reason to change the views we then held, and this exception is overruled.

The appellants, by their second exception, assign error to the trial Judge in his instructions as to the measure of damages, in that he failed to charge that "only the present cash value of the reasonably expected pecuniary benefits of which the beneficiaries were deprived by the death of plaintiff's intestate was recoverable in any event." On this point the trial Judge charged the requests of the plaintiff, the pertinent portions being as follows:

"(15) If the jury conclude that, under the law as charged by the Court and according to the evidence in the case, the plaintiff is entitled to recover a verdict then such verdict

should cover the pecuniary, or monetary, loss sustained by the beneficiaries named in the act by reason of the alleged wrongful death of the intestate; but no damages, other than pecuniary, or monetary, damages or loss, can be considered by the jury in making up the amount of the verdict, if any is to be awarded."

"(16) In determining the amount of damages, if any are to be awarded to the plaintiff, the jury are to consider only the pecuniary loss or damage, if any, flowing to the dependent beneficiaries named in the act and in the complaint. * * * "

And in connection with the mortuary tables: "In other words, you will ask: How long would the intestate probably have lived in the light of all of the evidence in the case?"

There is no instruction *in totidem verbis* as to "present value," and the appellants contend that what the trial Judge actually charged "cannot possibly be construed as submitting to the jury the present value of damages," but, on the contrary, "authorized the jury to award the present recovery of the total future benefits without making any deduction or discount to ascertain their present worth."

The question of the proper measure of damages in cases arising under the Federal Employers' Liability Act must be determined, of course, in accordance with the principles of law announced by the United States Supreme Court. In *C. & O. R. Co. v. Kelly,* 241 U. S., 485, 36 S. Ct., 630, 631, 60 L. Ed., 1117, L. R. A., 1917-F, 367, that Court stated the rule as follows: "The damages should be equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased. * * * So far as a verdict is based upon the deprivation of future benefits, it will afford more than compensation if it be made up by aggregating the benefits without taking account of the earning power of the money that is presently to be awarded.

It is self-evident that a given sum of money in hand is worth more than the like sum of money payable in the future."

In that case the trial Court charged that "if the jury find for the plaintiff, they will find a gross sum for the plaintiff against the defendant which must not exceed the probable earnings of Matt Kelly had he lived. The gross sum to be found for plaintiff, if the jury find for the plaintiff, must be the aggregate of the sums which the jury may find from the evidence and fix as the pecuniary loss above described, which each dependent member of Matt Kelly's family may have sustained by his death"—and refused defendant's requested instruction that the jury should "fix the damages at that sum which represents the present cash value of the reasonable expectation of pecuniary advantage," etc. The charge was held error, and not a correct statement of the proper measure of damages.

In *L. & N. R. Co. v. Holloway*, 246 U. S., 525, 38 S. Ct., 379, 380, 62 L. Ed., 867, the trial Judge charged the jury: "The measure of recovery if you find for the plaintiff, being such an amount in damages as will fairly and reasonably compensate the widow of the said John G. Holloway, deceased, for the loss of pecuniary benefits she might reasonably have received if the deceased had not been killed, not exceeding the amount claimed, to wit, $50,000.00." The railroad company appealed and the United States Supreme Court, through Mr. Justice Brandeis, said:

"The instruction given, though general, was correct. It declared that the plaintiff was entitled to recover 'such an amount in damages as will fairly and reasonably compensate' the widow 'for the loss of pecuniary benefits she might reasonably have received' but for her husband's death. This ruling did not imply that the verdict should be for the aggregate of the several benefits payable at different times, without making any allowance for the fact that the whole amount of the verdict would be presently paid at one time. The instruction bore rather an implication to the contrary; for

the sum was expressly stated to be that which would 'compensate.' The language used was similar to that in which this Court has since expressed, in *Chesapeake & O. R. Co. v. Kelly, supra,* 241 U. S., 489, 36 S. Ct., 630, 60 L. Ed., 1117, L. R. A., 1917-F, 367, the measure of damages which should be applied"—adding: "The company had of course, the right to require that this general instruction be supplemented by another calling attention to the fact that, in estimating what amount would compensate the widow, future benefits must be considered at their present value. But it did not ask for any such instruction."

In *Tyner v. A. C. L. Railroad Co.,* 149 S. C., 89, 146 S. E., 663, 665, 667, 668, the Court charged the plaintiff's fourth request as follows: "The jury are instructed that if they come to the conclusion from the evidence in this case that the plaintiff is entitled to a verdict, that the measure of recovery (if you find for the plaintiff), is such amount [in damages] as will fairly and reasonably compensate the widow of Mr. Marshall and his dependent children for the loss of pecuniary benefits which they might reasonably have received if the deceased had not been killed, not exceeding the amount claimed, to wit, fifty thousand dollars"—saying in the same connection: "I charge you that, and, to make it plainer that is the rule laid down in a number of cases, some say the measure of damages is the commercial value of the deceased to his widow and children; what was he worth to them?" He refused to charge the appellant's request that "the damage is limited strictly to the financial loss sustained and is always the present cash value of the future benefits of which the beneficiaries were deprived by the death, making adequate allowance according to the circumstances, for the earning power of money," etc.

Upon appeal this Court held that the defendant was entitled, under the *Holloway case,* to have its request charged, but that the error was harmless, since the charge taken as a whole was a correct statement of the governing legal prin-

ciples. The Supreme Court of the United States reversed the decision of this Court in that case (278 U. S., 565, 49 S. Ct., 35, 73 L. Ed., —), on the authority, among others, of *G., C. & S. F. Railway Co. v. Mosler,* 275 U. S., 133, 48 S. Ct., 49, 50, 72 L. Ed., 200, in which that Court, after restraining the rule laid down in the *Kelly case,* said: "The interpretation approved by us has become an integral part of the Statute. It should be accepted and followed."

It is evident that the disapproval of the charge in the *Tyner case* on the measure of damages was predicated, not upon any incorrectness of the charge actually made, but upon the refusal to charge the law more specifically as requested by the defendant. *Holloway case, supra.*

In *W. & A. R. R. v. Hughes,* 37 Ga. App., 771, 142 S. E., 185, 188, "the Court charged the jury, with reference to reducing to a present cash valuation a sum representing damages for loss of future benefits, that in making such reduction the jury should make an 'adequate allowance, according to the circumstances for the earning power of money,' and that it should 'be reduced to its present cash value upon a rate of interest which you fix as reasonable, just, and right under all the circumstances.' " It was held that "the charge stated a correct rule of law, and, in the absence of a special request for a more specific charge, a failure of the Court to charge that the jury, in making such reduction, should take into consideration the earning power of money when invested with ordinary care, was not error."

On appeal the United States Supreme Court said (278 U. S., 496, 49 S. Ct., 231, 232, 73 L. Ed., —) : "The railroad argues also that the charge failed to make it clear to the jury that, in computing the damages recoverable for the operation of future benefits, adequate allowance must be made, according to circumstances, for the earning power of money, that the verdict should be for the present value of the anticipated benefits, and that the legal rate of interest is not necessarily the rate to be applied in making the computation.

*Chesapeake & Ohio Ry. Co. v. Kelly*, 241 U. S., 485, 491, 36 S. Ct., 630, 60 L. Ed., 1117 [L. R. A., 1917-F, 367]; *Gulf, Colorado & Santa Fe Ry. Co. v. Mosler*, 275 U. S., 133, 48 S. Ct., 49, 72 L. Ed., 200. There is no room for a contention that the charge failed to state correctly the applicable rule. If more detailed instruction was desired, it was incumbent upon the railroad to make a request therefor. *Louisville & Nashville R. Co. v. Holloway*, 246 U. S., 525, 38 S. Ct., 379, 62 L. Ed., 867. It did not do so."

We deduce from these authorities that, as the present value rule laid down by the United States Supreme Court as to the measure of damages is "an integral part of the Statute," it is incumbent on the trial Judge to instruct the jury as to that rule, whether he be so requested or not; but, when such instruction is correct as a general statement of the rule, a party desiring more detailed instruction must make request therefor. In the case at bar there was no request for a charge as to the present value rule; but, as there was no charge at all, general or otherwise, stating the rule—the charge given not being susceptible of such construction—we think there was error. This exception is sustained.

By their third exception appellants complain of the following instructions to the jury: "And when he [Youngblood] was directed by the proper officers to get on board that engine, and to go to a certain point, it was the duty of the railway company to see that the railroad was kept safe for the movement of the train he was on. A safe place in which to work means a safe place in which he could run that train along that railroad. * * * The master must furnish him (the servant) with a safe appliance to work with, and a safe place in which to work."

The objection is that the charge made the master's duty with reference to the safety of the place of work an absolute one, and took no account of the rule of ordinary care or reasonable diligence. In cases arising

under the laws of this State the master's duty is governed by the principles of the common law as interpreted by this Court, and the rule is that the master must furnish the servant a reasonably safe place to work in and reasonably safe tools and appliances to work with. Cases brought under the Federal Employers' Liability Act, however, are governed by that Act and the principles of the common law as applied in the Federal Courts. *M. P. Railroad Co. v. Aeby,* 275 U. S., 426, 48 S. Ct., 177, 179, 72 L. Ed., 351; *Toledo, St. L. & W. Railroad Co. v. Allen,* 276 U. S., 166, 48 S. Ct., 215, 217, 72 L. Ed., 513. We turn, therefore, to the decisions of the United States Supreme Court.

In *S. A. L. Railway v. Horton,* 233 U. S., 492, 34 S. Ct., 635, 639, 58 L. Ed., 1062, L. R. A., 1915-C, 1, Ann. Cas., 1915-B, 475, that Court stated that under the Act the carrier's liability is conditioned upon negligence, and that under the common law "an employer is not a guarantor of the safety of the place of work or of the machinery and appliances of the work; the extent of its duty to its employees is to see that ordinary care and prudence are exercised, to the end that the place in which the work is to be performed and the tools and appliances of the work may be safe for the workmen." The instructions given by the trial Judge were held erroneous, in that they "imposed upon the employer an absolute responsibility for the safe condition of the appliances of the work, instead of limiting the responsibility to the exercise of reasonable care."

In the *Aeby case, supra,* the Court said: "Its [the railroad company's] duty in respect of the platform did not make petitioner an insurer of respondent's safety; there was no guaranty that the place would be absolutely safe. The measure of duty in such cases is reasonable care, having regard to the circumstances."

In the *Allen case, supra,* the Court made a somewhat different statement of the rule from that made in the *Horton case,* referring to it as "the rule of law which holds the em-

ployer to ordinary care to provide his employees a reasonably safe place in which to work." It appears that, under the principles of law announced by the United States Supreme Court as governing in cases of this kind, the charge in the case at bar imposed on the defendants a greater duty than that required by law and hence was error. This exception is sustained.

The fourth exception imputes error to the trial Judge in charging the plaintiff's request as follows: "And, on the other hand, you may consider whether or not, if the intestate had lived, his present wages would have increased by reason of experience and increased skill in his occupation." There was neither allegation nor evidence to which this instruction was applicable; it was therefore improper.

The trial Judge charged the defendants' second request as follows: "If you find from the testimony that the injuries resulting in the death of the plaintiff's intestate were caused solely by his own act, whether it was done by him negligently or recklessly, then I charge you that the plaintiff cannot recover and your verdict should be for the defendants." Immediately afterwards he said to the jury: "The defendants charge that Mr. Youngblood consciously and willfully violated the orders which were given to him, and that that violation of orders was the sole cause of his death, and that is the point in the case which this second request applies to."

By their fifth exception the appellants charge error in the additional remarks made by the Judge, on the ground that they were equivalent to instructing the jury that, in order for the defendants to escape liability on account of Youngblood's violation of an order, such violation must have been conscious and willful, whereas, if his death was due solely to his own violation of an order, it could make no difference, so far as the liability of the defendants is concerned, whether such violation was due to willfulness, or a lapse of memory, or any other cause on his part.

·· The jury could not possibly have been misled by the Judge's remarks, since he told them in the same connection: "Don't understand that I am telling you that. I am telling you the law, and telling you what they say. That is a question for you. As I have already charged you, if you find that he came to his death by reason of his sole negligence, then you cannot find for the plaintiff." Any negligent violation of the order was thus placed on the same basis as any conscious or willful violation, in so far as the defendants' liability was concerned. This exception is overruled.

Under the view we take of the case it becomes unnecessary to consider the sixth exception.

The judgment of the Circuit Court is reversed, and the case remanded for a new trial.

MESSRS. JUSTICES BLEASE and CARTER and ASSOCIATE JUSTICE GRAYDON concur.

MR. CHIEF JUSTICE WATTS did not participate.

MR. JUSTICE COTHRAN (concurring and dissenting): I concur in the disposition made by Mr. Justice Stabler of exceptions 2, 3, 4 and 5, and agree that, under his conclusion which directs a new trial, it was not necessary to consider exception 6, which charges error in refusing the motion before the Circuit Judge for a new trial.

I do not concur in his disposition of exception 1, which assigns error in refusing the motion of the defendants for a directed verdict in their favor. On the contrary, I am convinced that the motion should have been granted, and the result announced now, which is inevitable after possibly two years of suspense, anxiety, waste of time and energy, and expense to the county and the litigants. In my opinion remanding the case for a new trial is but rolling empty barrels about, a profitless, wasteful enterprise.

It does not appear to be appreciated that, in cases involving the Federal Employers' Liability Act, not only, as admitted, are the federal statutes and decisions upon every phase of the matter controlling, but the Supreme Court of the United States has promulgated, and time after time acted

upon, the principle that they *will review the record of the case,* and, if they find that there is no substantial basis in law for the liability of the employer, a judgment against him will be reversed, contrary to the principle announced by this Court, in cases under the laws of this State, that, when there is any evidence tending to show liability, the judgment must stand, unless no other reasonable inference can be drawn from the evidence than that there is no liability.

In the case of *Gulf R. Co. v. Wells,* 275 U. S., 455, 48 S. Ct., 151, 152, 72 L. Ed., 370, decided in January, 1928, the Court said: "Hence, if it appears from the record that under the applicable principles of law, as interpreted by the Federal Courts, the evidence was not sufficient, *in kind or amount,* to warrant a finding that the negligence of the engineer was the cause of the injury, the judgment must be reversed."

And in *Chicago, M. & St. P. R. Co. v. Coogan,* 271 U. S., 472, 46 S. Ct., 564, 565, 70 L. Ed., 1041: "This Court will examine the record, and if it is found that, as a matter of law, the evidence is not *sufficient* to sustain a finding that the carrier's negligence was a cause of the death, judgment against the carrier will be reversed"—citing *R. Co. v. McWhirter,* 229 U. S., 265, 33 S. Ct., 858, 57 L. Ed., 1179; *R. Co. v. Harris,* 247 U. S., 367, 38 S. Ct., 535, 62 L. Ed., 1167; *R. Co. v. Scarlet,* 249 U. S., 528, 39 S. Ct., 369, 63 L. Ed., 752. See, also, *R. Co. v. Padgett,* 236 U. S., 668, 35 S. Ct., 481, 59 L. Ed., 777.

I do not deem it necessary to repeat the observations made by me in the former appeal in this case (137 S. C., 47, 134 S. E., 660), in an unsuccessful effort to demonstrate the correctness of Judge Townsend's order directing a verdict for the defendants. But some decisions have been rendered since that appeal was decided, or not referred to in my opinion, to which I shall direct attention.

The case of *Sigmon v. Railroad Co.,* 186 N. C., 519, 120 S. E., 56, was one in the North Carolina State Court under the Federal Employers' Liability Act, brought by the ad-

ministrator of the engineer who was killed in a head-on collision with another train. The collision was due to the failure of the engineer to observe an order which had been delivered to him to meet and pass the other train at a certain station. He ran by the station and collided with the other train. The Supreme Court of North Carolina affirmed a judgment in favor of the plaintiff, holding that, while the negligence of the engineer was patent, there was evidence tending to show that the collision would not have occurred, but for the negligence of the other members of the train crew. Upon certiorari the Supreme Court of the United States, in a memorandum decision (267 U. S., 577, 45 S. Ct., 230, 69 L. Ed., 796), reversed the judgment, under authority of the cases of *Davis v. Kennedy*, 266 U. S., 147, 45 S. Ct., 33, 69 L. Ed., 212, and *Frese v. Railroad Co.*, 263 U. S., 1, 44 S. Ct., 1, 68 L. Ed., 131, both of which are referred to in my opinion upon the former appeal of this case.

In *McDonald v. R. Co.*, 166 Minn., 87, 207 N. W., 194, 198, the engineer, McDonald, was killed in a head-on collision. He and the conductor, McCabe, had both received a meet order. Before the train which they were to meet at a certain station had arrived, the engineer signaled the conductor that he was ready to proceed. Both had forgotten their orders. The plaintiff sought to come within the protection of the Federal Employers' Liability Act, by reliance upon the negligence of the conductor in signing the engineer ahead, as contributory "in part" to the disaster. The plaintiff had a verdict in the trial Court, and, upon appeal, the Supreme Court reversed the judgment of the trial Court, and directed judgment for the defendant, saying:

"Both the engineer and conductor had a duty, personal to himself, to see to it that order 56 was not violated. Its violation by McDonald, in the absence of some other intervening and efficient cause, was negligence which continued to the place of the collision and was the producing cause of the

accident. The fact that McCabe was also guilty of negligence in his silent permission in allowing the engineer, who was the primary wrongdoer, to violate the order, will not permit plaintiff to recover upon the theory that McCabe's negligence was a contributing cause. To so hold would permit the anomaly of an employee violating orders proximately resulting in his own injury to recover *upon the theory that if some other employee had done his duty and prevented the violation the injury would not have occurred.*" (Italics added.)

The latest deliverance of the Supreme Court of the United States, that has come to my attention, is the case of *Unadilla Valley R. Co. v. Caldine,* 278 U. S., 139, 49 S. Ct., 91, 73 L. Ed., ——, decided December 10, 1928. The facts were substantially these:

The defendant railroad company, engaged in interstate commerce, operates trains on a single track from Richfield Junction, through Bridgewater and River Forks, to New Berlin, in the State of New York. Printed orders were issued to all employees: "Train No. 2 will pass train No. 15 at Bridgewater yard," and "Train No. 15 will take turntable siding at Bridgewater to allow train No. 2 to pass." Unless countermanded in writing by the superintendent, these orders were permanent. They were not countermanded. Train No. 2 was a gasoline passenger car, of which plaintiff's intestate, Caldine, was conductor, and Dibble was motorman. Train No. 15 was a freight train of which Risley was conductor. They collided head-on a short distance south of Bridgewater yard, and Caldine was killed. Risley, the conductor of the freight train, was accustomed each morning to telephone from River Forks, two miles south of Bridgewater, to Dawson, the defendant's station agent at Bridgewater, informing him that the freight was on its way and asking him to hold the gas car at Bridgewater. The agent's habit was orally to deliver this message to Caldine, the conductor of the gasoline car. A few minutes prior to the col-

lision, Risley, according to custom, telephoned to Dawson, but Dawson omitted to inform Caldine. Dawson asserted that he did tell Dibble, the motorman, but Dibble denied the assertion. At any rate, neither the station agent nor the motorman informed the conductor that the freight was approaching Bridgewater. Nevertheless, the conductor, in violation of printed orders, signaled the gasoline car to proceed to River Forks, and the motorman, also in violation of them, obeyed the signal and started the car in plain sight of the station agent.

The Court of Appeals of New York (246 N. Y., 365, 159 N. E., 172), in affirming the judgment in favor of the plaintiff in the trial Court, said: "The conductor's negligence cannot be viewed as the sole proximate cause of the collision. The station agent could and should have prevented it; so could the motorman. All three were negligent. If Caldine had not signaled in violation of orders, the collision would not have occurred. Neither would it have happened if Dawson had communicated Risley's message to Caldine. * * * Dawson knew that the freight was approaching; Dibble ought to have known it and should have kept his car stationary. Negligence was not solely Caldine's. His death resulted in part from the negligence of Dawson and Dibble."

This judgment of the New York Court of Appeals was reversed by the Supreme Court of the United States in the following opinion:

"Harold E. Caldine, an employee on the petitioner's railroad, was killed in a collision and his administrator brought this action. The case is within the Federal Employers' Liability Act and the only question before us is whether the death resulted in whole or in part from the negligence of any of the employees of the carrier, within the meaning of the Act. Act April 22, 1908, c. 149, § 1, 35 Stat., 65 [U. S.] Code, title 45, § 51 (45 U. S. C. A., § 51).

"Caldine was conductor of train No. 2 upon a single track that passed through Bridgewater. He had printed orders that

his train was to pass train No. 15 in Bridgewater yard, and that train No. 15 was to take a siding there to allow No. 2 to pass. The order was permanent unless countermanded in writing by the superintendent. Its purpose to prevent a collision was obvious and there was no excuse for not obeying it. But this time, after reaching Bridgewater, instead of waiting there as his orders required him to do, Caldine directed his train to go on. The consequence was that at a short distance beyond the proper stopping place his train ran into train No. 15 rightly coming the other way, and he was killed. The facts relied upon to show that the collision was due in part to the negligence of other employees are these. The conductor of No. 15 generally, or when he was a little late in arriving at a station about two miles from Bridgewater would telephone to the station agent at Bridgewater that he was coming. He did so on the day of the collision. The station agent who received the message testified that he told the motorman of No. 2, but the motorman denied it. At all events the deceased, the conductor of No. 2, did not receive the notice. It is argued that the failure to inform the conductor, and the act of the motorman in obeying the conductor's order to start, if, as the jury might have found, he knew that train No. 15 was on the way, were negligence to which the injury was due at least in part. It is said that the motorman should have refused to obey the conductor and should have conformed to the rule, and that his act in physically starting the car was even more immediately connected with the collision than the order of the deceased.

"The phrase of the statute, 'resulting in whole or in part,' admits of some latitude of interpretation and is likely to be given somewhat different meanings by different readers. Certainly the relation between the parties is to be taken into account. It seems to us that Caldine or one who stands in his shoes is not entitled as against the railroad company that employed him to say that the collision was due to any one but himself. He was in command. He expected to be obeyed and he was obeyed as mechanically as if his pulling the bell

had itself started the train. In our opinion he cannot be heard to say that his subordinate ought not to have done what he ordered. He cannot hold the company liable for a disaster that followed disobedience of a rule intended to prevent it, when the disobedience was brought about and intended to be brought about by his own acts. See *Davis v. Kennedy,* 266 U. S., 147, 45 S. Ct., 33, 69 L. Ed., 212.

"Still considering the case as between the petitioner and Caldine, it seems to us *even less possible to. say that the collision resulted in part from the failure to inform Caldine of the telephone from train No. 15. A failure to stop a man from doing what he knows that he ought not to do, hardly can be called a cause of his act: Caldine had a plain duty and he knew it. The message would only have given him another motive for obeying the rule that he was bound to obey.* There was some intimation in the argument for the respondent that the rule had been abrogated. The Courts below assumed that it was in force, and we see no reason for doubting that their assumption was correct.

"We have dealt with the difficulties that led the Court of Appeals to a different conclusion, and are of opinion that the judgment must be reversed." (Italics added.)

In 31 F. (2d), 239, the Circuit Court of Appeals of the Second Circuit decided the case of *Unadilla Valley R. Co. v. Dibble.* The plaintiff was the motorman of the car of which Caldine, in the case last cited, was the conductor, and brought suit for damages on account of injuries received in the same collision. Upon the authority of the *Caldine case, Davis v. Kennedy,* 266 U. S., 147, 45 S. Ct., 33, 69 L. Ed., 212, and *Railway Co. v. Wiles,* 240 U. S., 444, 36 S. Ct., 406, 60 L. Ed., 732, the Circuit Court of Appeals reversed a judgment in favor of Dibble, holding (quoting syllabus) :

"As against the employer railroad company, its motorman, who in violation of rule that his train should not pass a certain station till arrival of another train, except on writ-

ten order, a copy of which should be delivered to him as well as the conductor, started the train by the station, on signal from the conductor, when no written order therefor had been given, was primarily responsible for the injury which befell him from the collision with the other train, so that notwithstanding the negligence of the conductor in giving the signal he cannot recover under Federal Employers' Liability Act (45 U. S. C. A., §§ 51-59), imposing liability on a common carrier engaged in interstate commerce for injury to an employee resulting in part from negligence of any of its officers, agents, or employees."

I think, therefore, that the judgment should be reversed, and the case remanded for judgment in favor of the defendants, under Rule 27.