St. Louis Southwestern Railway Company *v.* Simpson.

Opinion delivered November 9, 1931.

*Carter, Jones & Turney* and *Lamb & Adams,* for appellant.

*Pace & Davis,* for appellee.

McHaney, J. Appellee's intestate, A. E. Simpson, was, at the time of his death, 56 years old, and had been in the employ of appellant thirty years as an engineer. On August 2, 1930, he was directed by appellant to run engine 775, known as Extra 775, a freight train, from the Pine Bluff, Arkansas, shops to the Texarkana, Arkansas, yards. Before leaving Pine Bluff the conductor and engineer were each given order No. 104, the material part of which is as follows: "Eng. 775 run extra Pine Bluff shops to Texarkana yards, has right over No. 18 Eng. unknown Pine Bluff shops to cross over McNeil." This

being an extra train, it did not operate by any schedule in the time tables, but was operated under telegraphic orders addressed to the train which bore the number of the engine. Under the above order, with which the engineer, fireman, conductor and three brakemen were familiar, they proceeded to the crossover at McNeil where they passed from the main line to the side track. At McNeil the engineer and conductor were given order No. 132 reading as follows: "Train order No. 132, August 2, 1930, McNeil. To Extra 775 south. Second 18 Eng. 778 meet Extra 775 south at Stamps." The fireman and head brakeman were on the engine with the engineer and presumably all of them read this order. Evidently they all misinterpreted it, no doubt believing it referred to train No. 18 mentioned in the order first above quoted, and that they could continue safely to Stamps, some few miles further south. Engineer Simpson did not bring his train to a stop but slowly proceeded through the station on the siding, and headed out on the main line towards Stamps. When the swing brakeman Craig, who was in the cupola of the caboose saw the train was not going to stop, he hollowed out to conductor DeMaine, "No. 18 is not here yet. If you have not got anything more on No. 18, you had better stop. DeMaine said: 'We have a meet with Second 18 at Stamps.' I says, 'If you haven't got something on No. 18, you haven't got it, pull the air'." Craig then testified that the conductor told him to hand him the train orders that they had received out of Pine Bluff and out on the line, and that he rushed up into the cupola, got the orders where they kept them on a clip board, and handed them to the conductor who took them and held them in his hand looking at them until they had a head-on collision with train No. 18 about a mile south of the station at McNeil. Rear brakeman Dorman on Extra 775 south testified to substantially the same facts as did Craig, and in addition said that he thought that the train was going to stop, and that he intended to cut the crossing at the public highway, but saw the station agent at McNeil, Key, standing there with an

order in his hoop which Key took out and handed to him. About that time the caboose took a lunge like they were leaving. He opened the order, read it and handed it to Conductor DeMaine which is the same order above mentioned as No. 132. DeMaine told him to "high-ball the switch" which meant to go ahead, and that he looked out to see that the negro attending the switch properly threw it. He then went into the caboose and asked DeMaine where they were going for No. 18, and that DeMaine said "Let's see what we got out of Pine Bluff on 18." He then said to the conductor, "What did you get here on No. 18?" And the conductor replied: "All we got here was an order to meet Second No. 18 at Stamps." Dorman then said, "Is that all you got here?" DeMaine said, "Yes." Dorman said, "Pull the air, as you haven't got anything on No. 18 then, stop this train." To which the conductor replied: "I will pull the air." He said that swing brakeman Craig was standing there, and the conductor told him to go up and get the orders, and that he told the conductor to "pull the air and then look at the orders." He said that he started to pull the air himself, but that the conductor told him not to, and that, while the conductor was standing looking at the orders, their train collided with No. 18. He further said that when he asked the conductor about the orders, told him to pull the air, started to pull it himself and was directed not to do so, they were seven to ten car lengths out on the main line. It was shown that there were three appliances on the caboose for pulling the air. Pulling the air means to open a valve which causes the air brakes to set on the wheels of the car and stop the train. It was shown that if the air was pulled gradually that the train could have been stopped in 12 to 14 car lengths.

As a result of this unfortunate collision five persons lost their lives and another seriously injured—the engineer, fireman and head brakeman on Extra 775 were killed, the engineer and fireman on train 18 were killed and the head brakeman thereon seriously injured.

Appellee brought this action under the Federal Employers' Liability Act against appellant, which is engaged in interstate commerce, to recover damages for her intestate's injuries and death. The complaint alleged three grounds of negligence, but before the trial all allegations of negligence were withdrawn except the following: "On account of the conduct of DeMaine, conductor on said train, who carelessly, negligently and recklessly, after discovering the peril of the deceased, A. E. Simpson, failed to apply the air brakes from the rear end and stop said train, thereby causing the train upon which deceased was riding to collide with another train operated by the agents and servants of the defendant upon said main line, causing the deceased to receive injuries from which he thereafter died." The answer admitted that appellant was engaged in interstate commerce, denied that it was guilty of any negligence, and alleged that Simpson's injuries and death were caused solely by his own negligence resulting "not only in his injuries and death but in the death of several others of his co-employees and in the destruction of property of this defendant of the value of more than $100,000"; that Simpson's negligence consisted in running and operating his train in violation of orders which he at the time well knew.

A trial to a jury resulted in a verdict and judgment in appellee's favor for $28,000.

As we understand the respective contentions of the parties, the sole question presented for our decision is whether the evidence is sufficient to sustain the verdict and judgment against appellant. Appellant's request for a peremptory instruction was denied. It is true that in the brief of counsel for appellant, complaint is made of the instructions given at the request of appellee and of the refusal of the court to give certain instructions requested by appellant; but this complaint is based on the ground that appellee was not entitled to recover at all, and therefore, not entitled to any instructions, and that the instructions requested by it were, in effect, peremp-

tory, which, as is contended, was demanded by the law and the evidence.

It is conceded by both parties that liability if any is governed by the Federal Employers' Liability Act, and only one ground of negligence was submitted to the jury as shown by instruction No. 9, given at appellee's request, to-wit: "The court instructs the jury that the plaintiff relies alone upon the doctrine of discovered peril for a recovery in this case, and you will not consider any other allegation of negligence." It is contended, however, by able counsel for appellant that the doctrine of discovered peril or the "last clear chance doctrine" is not applicable to this case; that it is a case of concurrent negligence only, appellee's intestate and conductor DeMaine both being guilty of negligently operating the train in violation of express orders, and is subject to the comparative negligence rule in the Federal Employers' Liability Act as construed in *Davis* v. *Kennedy*, 266 U. S. 147, 45 S. Ct. 33; *Frese* v. *C. B. & Q. R. Co.*, 263 U. S. 1, 44 S. Ct. 1; *Unadilla Valley Ry. Co.* v. *Caldine*, 278 U. S. 139, 49 S. Ct. 91; *Unadilla Valley Ry. Co.* v. *Dibble*, 31 Fed. (2d) 239; *Bradley* v. *N. W. Pac. R. Co.*, 44 Fed. (2d) 683; *Yadkin R. Co.* v. *Sigman*, 186 N. C. 519, 120 S. E. 56, reversed by memorandum opinion in 267 U. S. 577, on the authority of *Davis* v. *Kennedy, supra,* and *Frese* v. *C. B. & Q. R. Co., supra.*

Appellee contends that because the conductor, DeMaine, failed and refused to stop the train by pulling the air at a time when it was moving out from the side track on to the main line, after he had been told by two brakemen that the order he received at McNeil did not relate to train No. 18, but to Second 18, and after he had refused to permit one of the brakemen to pull the air and thereby prevent a collision, he discovered the perilous situation of them all, especially engineer Simpson, and was therefore guilty of negligence, independent of the negligence of Simpson in moving his train contrary to order 104. Whereas appellant contends "that the failure of DeMaine to act does not enter into the case, and that

from a legal standpoint the conduct of Simpson constitutes the sole, proximate cause of his injury and death.'' Therefore appellant says that the cases as above cited are decisive of this case against appellee and that no recovery can be had.

The discovered peril doctrine, or the doctrine of the ''last clear chance,'' as it is sometimes called, constitutes an exception to the rule that the contributory negligence of the plaintiff is a bar to his action. Under this doctrine, where one discovers the perilous situation of another in time, by the exercise of ordinary care, to prevent injury to him, it is his duty to do so, and he is guilty of negligence if he fails to do so, which is regarded in law as the proximate cause of the injury, and this too regardless of the contributory negligence of the injured person. Such a person is regarded in law as having the last clear chance to prevent injury or death to another, and it is his duty to do so. It is sometimes referred to as the doctrine of *Davies* v. *Mann,* 10 M. & W. 546, and the principle is now generally recognized by the courts of both England and America. It has been announced in numerous decisions by this court, by the Supreme Court of the United States and by text writers. It has also been held to apply in cases brought under the Federal Employers' Liability Act. *Mo. Pac. Ry. Co.* v. *Skipper,* 174 Ark. 1083, 298 S. W. 849. Petition for certiorari to this court was denied by the Supreme Court of the United States. *Mo. Pac. Ry. Co.* v. *Skipper,* 276 U. S. 629, 18 S. Ct. 322. It is true that the facts in this case present an unusual situation in which to apply the rule of discovered peril, but we are unable to perceive why it should not apply. The usual situation for the application of the rule is for the operatives of the train to discover the perilous situation of another on its tracks in time to avoid injuring him, and generally arises under our lookout statute. (Crawford & Moses' Dig., § 8568). As said in 20 R. C. L., p. 141, § 115: ''It is not, however, limited to any particular class of cases. It is proper to allow a recovery where the driver of a motor car sees a pedes-

trian in time to avoid injury by stopping and fails to reduce his speed or bring his car to a stop. And it has been held that when a bathhouse keeper is notified of a bather's disappearance so soon thereafter as to justify a reasonable inference that an immediate search in the water would result in rescue before death, and has no one present to attempt the rescue, and fails to make an immediate search in the water for the missing bather, it is error, in an action to recover damages on account of the death, to direct the jury to return a verdict for the defendant.'' It has also been said by the Supreme Court of the United States in *Grand Trunk R. Co.* v. *Ives,* 144 U. S. 408, 12 S. Ct. 679, that: ''Although the defendant's negligence may have been the primary cause of the injury complained of, yet an action for such injury cannot be maintained if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured, subject to this qualification, which has grown up in recent years, * * * that the contributory negligence of the party injured will not defeat the action if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence.'' See also *L. & N. R. Co.* v. *Hurt,* 13 So. (Ala.) 130.

In this case we think it fair to assume that Engineer Simpson, the fireman, the head brakeman and the conductor misunderstood or misinterpreted order 132 received at McNeil directing them to meet Second 18 at Stamps. They evidently made a mistake in thinking that said order referred to train No. 18 over which they were given right-of-way to McNeil, and not to Second 18, about which they had no information so far as this record discloses, and was itself an extra train going north and following closely train No. 18. Having misunderstood the order Engineer Simpson moved his train out from the side track on to the main line evidently believing that he had orders to meet train No. 18 at Stamps. We cannot believe that he intended to commit suicide, or to endanger his own life and that of so many others. But the rear

brakeman and the swing brakeman, Dorman and Craig, did not misunderstand order No. 132, and, realizing the danger to themselves and to everybody concerned, urged conductor DeMaine to stop the train and prevent possible injury and death. He prevented Dorman from stopping the train and told him he would do it himself, but, instead of stopping the train and then reading his orders, he permitted the train to go on to destruction while reading his orders. We are therefore of the opinion that the negligence of conductor DeMaine in failing and refusing to stop the train, and of Dorman and Craig in failing to stop it, was the sole and proximate cause of the injury, because they knew and realized the perilous situation into which the negligence of engineer Simpson, in failing to understand his orders, had taken them, but did not use the means at their command to avert the tragedy. We think the rule announced in the cases above cited and relied upon by learned counsel for appellant have no application to the facts in this case. Although they were all brought and prosecuted under the Federal Employers' Liability Act, they were brought and prosecuted on the theory of comparative negligence as defined in the act and not under the doctrine of discovered peril or "last clear chance." We are furthermore of the opinion that none of the said cases presents a state of facts showing a supervening act of negligence, arising subsequent to and independent of the contributory negligence of Simpson, such as is the fact in this case. The fact that DeMaine, Dorman and Craig knew the perilous situation, and, with three different instrumentalities near at hand, the operation of any one of which would have taken but an instant, failed to exercise ordinary care to use them to avert the injury, is such a supervening act of negligence as to invoke the discovered peril doctrine and constitutes the sole and proximate cause of the injury, regardless of Simpson's contributory negligence in failing to understand his orders.

It necessarily follows from what we have said that the judgment must be affirmed. It is so ordered.