## ST. LOUIS SOUTHWESTERN RAILWAY CO. *v.* SIMPSON, ADMINISTRATRIX.

No. 674. Argued April 25, 1932.—Decided May 16, 1932.

*Mr. Harold R. Small,* with whom *Mr. A. L. Adams* was
on the brief, for petitioner.

348

*Mr. Frank Pace* for respondent.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The administratrix of the estate of Simpson, an employee of the petitioner, brought this action under the Federal Employers' Liability Act (Act of April 22, 1908,

c. 149, § 1, 35 Stat. 65; U. S. Code, Title 45, § 51) to re-
cover damages for his death. She had a verdict in her
favor in the Circuit Court of Prairie County, Arkansas,
and the Supreme Court of the State affirmed. 184 Ark.
633; 43 S. W. (2d) 251. The case is here on certiorari.

Simpson was the engineer of No. 775, an extra train
engaged in interstate commerce. Before leaving Pine
Bluff, Arkansas, he received a written train order, No.
104, notifying him to proceed south to the cross-over at
McNeil, Arkansas, and there wait upon a siding until
another train, No. 18, going north, had arrived and passed.
On arriving at McNeil, Simpson took his train, consisting
of 43 freight cars, upon the siding at the cross-over, but
did not wait there. He had received at McNeil another
order (train order No. 132) notifying him that another
train (second 18) was to meet him farther south at
Stamps. The conjecture is offered that he confused train
No. 18 with second No. 18, though there is no dispute
that to a railroad employee the description was entirely
intelligible, trains of the same number being designated
as first, second, third and so forth. At all events, Simp-
son instead of waiting at the siding moved out upon the
main track. About a mile away there was a head-on
collision between his train and No. 18, in which he and
others were killed. ·

The respondent admits, as she admitted on the trial,
that the engineer was negligent and rests her right to re-
cover upon what is characterized as the doctrine of " the
last clear chance." To bring that doctrine into play she
relies upon these facts: At the end of the long train of 43
freight cars was a caboose in which the conductor and two
brakemen rode. The brakemen say that as the train left
the siding, they remembered the first order and asked the
conductor whether any new ones contradicting it had
come into his hands. Not hearing of any, they called out

to apply the air brakes, and one of them offered to do so himself. This the conductor forbade, and said to bring him the written orders which were in the cupola of the caboose, so that he might read them again. This was done at once. While the orders were in the conductor's hands and he was reading them again, the collision occurred.

The facts so summarized are insufficient to relieve the engineer from the sole responsibility for the casualty that resulted in his death. What was said by this court in *Davis* v. *Kennedy*, 266 U. S. 147, might have been written of this case. " It was the personal duty of the engineer positively to ascertain whether the other train had passed. His duty was primary as he had physical control of No. 4, and was managing its course. It seems to us a perversion of the statute to allow his representative to recover for an injury due to his failure to act on the ground that possibly it might have been prevented .if those in secondary relation to the movement had done more." See also *Unadilla Ry. Co.* v. *Caldine*, 278 U. S. 139; *Frese* v. *Chicago, B. & Q. R. Co.*, 263 U. S. 1, 3; *Great Northern Ry. Co.* v. *Wiles*, 240 U. S. 444, 448.

We do not need to inquire whether a different conclusion would follow if the conductor in the caboose had discovered that the engineer had gone upon the main track through a misunderstanding of a later order, and discovering this, had failed after a substantial interval of time to give warning of a peril that he could have easily averted. Nothing of the kind appears. There is an absence of the essential factors that wake into life the doctrine of the last clear chance. In the first place, the conductor did not know any more than Simpson did that an order had been violated. He was distrustful of his memory, and was looking at the written orders at the moment of the collision. Negligent he may have been, but not

recklessly indifferent to a duty to counteract a peril perceived and understood. *Woloszynowski* v. *N. Y. C. R. Co.*, 254 N. Y. 206; 172 N. E. 471; *Inland & Seaboard Coasting Co.* v. *Tolson*, 139 U. S. 551, 558. In the second place, the negligence of the engineer and the negligence of the conductor were substantially concurrent. The negligence of the engineer was a continuing one (*St. Louis & San Antonio Ry. Co.* v. *Schumacher*, 152 U. S. 77, 81), for he was under a duty from the moment that he went out on the main track to return to a place of safety. The negligence of the conductor in failing to give warning was not separated by any considerable interval from the consequences to be averted, nor is there any satisfactory proof that warning, if given, would have been effective to avert them. The transaction from start to finish must have been a matter of seconds only. In the brief for the respondent nice calculations are submitted in an attempt to prove that if the conductor had applied the brakes at once, his train could have been stopped at a point that would have separated it by a space of approximately half a mile from train No. 18 rushing on from the south, and that if all this had happened, the engineer of No. 18 might have noticed the stationary train in time to stop his own and thus prevent collision. Calculations so nice are unavailing to prove anything except the unity of the whole transaction. The several acts of negligence were too closely welded together in time as well as in quality to be viewed as independent. *Kansas City Southern Ry.* v. *Ellzey*, 275 U. S. 236, 241.

The judgment should be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*