## HAWTHORNE v. INTERNATIONAL–GREAT NORTHERN R. CO.

No. 1366.

Court of Civil Appeals of Texas. Waco.
May 11, 1933.

Rehearing Denied Sept. 21, 1933.

Jones & Jones and Percy Woodard, all of Marshall, and B. R. Reeves, of Palestine, for appellant.

Sewell, Taylor, Morris & Garwood, of Houston, for appellee.

ALEXANDER, Justice.

This action was brought by R. M. Hawthorne against the International-Great Northern Railroad Company to recover damages for personal injuries sustained by him while in the employment of the railway company as a fireman, as the result of a head-on collision between two of the defendant's trains. The trial court instructed a verdict for the defendant, and the plaintiff appealed.

On the occasion in question a railway crew consisting of appellant as fireman and a conductor and an engineer were ordered to run

a light engine No. 371 from Palestine, Tex., to Taylor, Tex., where the engine was to be used in interstate commerce. After said engine left Palestine, and while proceeding south between Buffalo and Jewett, a collision between said engine and appellee's north-bound passenger train No. 4 became apparent, and appellant, in order to save his own life, leaped from his engine, sustaining the injuries complained of. The passenger train, with which the engine in question collided, was a regular train and was running on schedule time. It is not charged that any member of its crew was in anywise negligent, but it is charged that the conductor and engineer on the engine on which appellant was riding were negligent in failing to stop said engine at Buffalo to allow north-bound train No. 4 to pass, and in running said engine on the main line on the time of said passenger train. It is conceded by the railway company that appellant at the time of his injuries was an employee of the railway company and was engaged in interstate commerce. It is further conceded that the Federal Employers' Liability Act (45 USCA §§ 51–59) applies, and that contributory negligence on the part of appellant is not a complete defense. It is insisted, however, that appellant's own negligence in failing to call to the attention of the conductor and engineer the fact that they were running the engine on the main line on the time of the regular train was the sole cause of the collision, and that appellant assumed the risk of injury incident to such collision.

It appears that all three of the employees in charge of the engine were experienced in the line in which they were engaged, and were familiar with the rules of the company and the track over which the engine was to run. Before leaving Palestine, the crew received written train orders. These orders were delivered, one copy to the conductor, and another to the engineer, but were read by the fireman as was required by the rules of the company. The orders read: "Eng. 371. Run extra to Taylor. Has right over first 66, Eng. 1115, Palestine to Valley Jct. 66 gets this order at Valley Jct." '

The general rules of the company, of which all members of the crew were familiar, provided:

"1. All northbound trains are superior to trains of the same class in the opposite direction."

"73. Extra trains are inferior to regular trains."

"87. An inferior train must keep out of the way of opposing superior trains and failure to clear the main track by the time required by rule must be protected as prescribed by rule 99.

"Extra trains must clear the time of opposing regular trains not less than five minutes unless otherwise provided, and will be governed by train orders with respect to opposing extra trains."

"1302. The general direction and government of a train is vested in the conductor. He is responsible for its safe and proper conduct, and all men employed on the train are required to yield a willing obedience to his proper orders."

"106. Both the conductor and the engineman are responsible for the safety of the train and the observance of the rules, and, under conditions not provided for by the rules, must take every precaution for protection."

"956. They (engineers) are jointly responsible with the conductor for the safety of the train and proper observance of the rules. * * * "

"980. They (firemen) are under the direction and will obey the proper orders of the engineman while on duty."

"983. They (firemen) must not handle the engine in the absence of the engineman, unless authorized by the master mechanic; or in some emergency are requested to do so by the conductor."

"981. They (firemen) must carefully read train orders, keep them in mind and assist in their observance. Call attention of conductors or enginemen immediately to any failure to observe train orders or to comply with rules and instructions. In cases where safety of trains and observance of rules or orders are involved, firemen are held responsible to the extent of their ability to prevent accident or violation of rules."

The appellant alone testified to the circumstances which brought about the collision. He detailed these circumstances substantially as follows: On the occasion in question, engine No. 371 left Palestine at 6:30 p. m. Appellant was looking after the fire and providing the steam with which the engine was propelled and otherwise keeping the engine in running order. The engine was stopped at Oakwood for a short time for the purpose of allowing the fireman to oil it. Thereafter it proceeded south to Buffalo at the usual rate of speed of about 45 or 50 miles per hour. Buffalo is about 10 or 12 miles north of Jewett, and there is no side track for the passing of trains between Buffalo and Jewett. Appellant knew this fact. Passenger train No. 4 was due out of Jewett at 8:05. Appellant testified that he had a copy of the time table in his possession, and was required under the rules to keep familiar therewith, but that he did not actually know when train No. 4 was due to leave Jewett. Before reaching Buffalo appellant looked at his watch and knew that it was then after 8 o'clock. The conductor occupied an improvised seat on the engine immediately in front of the fireman. Shortly before reaching Buffalo appellant saw the conductor look at his watch and the time table, and he then thought of on-coming No.

4, but did not say anything to the conductor about it. He thought the conductor was looking after that. He again thought of on-coming No. 4 when they went through Buffalo where the last side track was located, and he then wondered where the conductor "was going for it." He further testified that if he had thought of it when going through Buffalo he would have known that if train No. 4 was on time there was danger of a head-on collision; that he did not look at his time table when they were going through Buffalo because he saw the conductor looking at his time table and comparing his watch therewith, and that he relied solely and entirely on the conductor to look after the safety of the train. The collision occurred about half way between Buffalo and Jewett.

■ Since the court withdrew the case from the jury and gave an instructed verdict for the appellee, we must construe the evidence most favorable to the appellant. The evidence was sufficient to raise the issue of negligence on the part of the conductor and engineer, proximately causing the collision, and the appellant was entitled to have the case submitted to the jury, unless we can say, as a matter of law that his own negligence defeats his right to recover, or that he assumed the risk.

■■ As we understand the rule, in order to defeat the claim of an employee seeking to recover under the Federal Employers' Liability Act, it is sufficient to establish that he alone was negligent, or that his negligence was the direct and primary cause of his injuries. Davis v. Kennedy, 266 U. S. 147, 45 S. Ct. 33, 69 L. Ed. 212; Frese v. Chicago, B. & Q. R. Co., 263 U. S. 1, 44 S. Ct. 1, 68 L. Ed. 131; Unadilla Valley Ry. Co. v. Caldine, 278 U. S. 139, 49 S. Ct. 91, 73 L. Ed. 224; Great Northern Ry. Co. v. Wiles, 240 U. S. 444, 36 S. Ct. 406, 60 L. Ed. 732; St. Louis Southwestern Ry. Co. v. Simpson, 286 U. S. 346, 52 S. Ct. 520, 76 L. Ed. 1152. It is not a complete defense, however, for the railway company to establish that the injured employee's negligence was a mere secondary or contributing cause co-operating with the negligence of other employees. U. S. C., title 45, §§ 51, 52, and 53 (45 USCA §§ 51–53); Union Pac. R. Co. v. Hadley, 246 U. S. 330, 38 S. Ct. 318, 62 L. Ed. 751; Illinois Central R. Co. v. Skaggs, 240 U. S. 66, 36 S. Ct. 249, 60 L. Ed. 528; Brock v. Mobile & O. R. Co., 330 Mo. 918, 51 S.W.(2d) 100, writ of certiorari denied, 287 U. S. 638, 53 S. Ct. 87, 77 L. Ed. ——.

■ Under the facts of this case it appears that the conductor was the official who was in charge of the general direction and government of the train, and that he was primarily responsible for its safe and proper conduct. It was his personal duty to give the orders as to when the train should proceed, and when and where it should stop. All other members of the crew, including the fireman, were required to yield a willing obedience to his command. The engineer controlled the throttle and was in charge of the physical operation of the train. He was made jointly responsible with the conductor for the safety of the train and the proper observance of the rules. The fireman's duty was to operate the fire and provide steam for propelling the engine, and otherwise keep the engine in running order. He was under the direction, and required to obey the orders, of the conductor and engineer, and was not permitted to run the train except in an emergency, and then only when so requested by the conductor. The conductor and engineer were both on duty and presumably were performing their official duties. It is apparent, therefore, that the conductor and engineer were primarily responsible for putting the engine into a position of danger. The fireman did not create the dangerous situation. He was required, under rule 981, to "call attention of conductor or engineer immediately to any failure to observe train orders or to comply with rules and instructions," and in case the safety of the train or observance of rules or orders were involved he was made responsible to the extent of his ability to prevent an accident. His negligence, if any, consisted, not in causing the collision, but in failing to exercise proper care to arrest the negligent acts of others who had set in motion the agency which brought it about. As said by the Supreme Court in Unadilla Valley Ry. Co. v. Caldine, supra, "a failure to stop a man from doing what he knows that he ought not to do, hardly can be called a cause of his act." We cannot say that the evidence establishes as a matter of law that appellant's negligence, if any, was the direct and primary cause of the collision.

On the question of assumed risk, the appellee does not contend that the danger of a head-on collision is one so usual and ordinary in railroading as to raise the presumption that a fireman impliedly assumes the risk of being so injured, but it does contend that the appellant, at the time the engine left Buffalo, knew that said engine was running on the time of train No. 4, and that a collision was imminent, and it became his duty to call attention to the conductor that the rules of the company were being violated and the safety of the train endangered, and, upon his failure to do so, he assumed the risk of being so injured.

■ Under the doctrine of assumed risk, an employee not only assumes those risks ordinarily incident to the discharge of his duty in the particular employment in which he is engaged, but also those extraordinary or unusual dangers of which he has actual knowledge or which are so plainly observable that he may be presumed to have known thereof. 39 C. J. 684; 18 R. C. L. 676; Gila Valley, G. & N. Ry. Co. v. Hall, 232 U. S. 94, 34 S. Ct.

229, 231, 58 L. Ed. 521. But where a master seeks to avoid liability for injuries brought about by extraordinary or unusual dangers, it must be shown that the employee actually knew of the danger, or that it was so plainly observable that he will be charged with notice thereof. Such doctrine is applied in those cases where, during the course of employment, tools or appliances become defective and the servant, with full knowledge thereof and appreciation of the danger, continues in the use of such defective tools or appliances. It is based on the idea that the servant is in as good position to protect himself as is the master. It is sometimes expressed in the phrase "volenti non fit injuria," which means, in short, that one who willingly encounters a known danger cannot recover. Monongahela West Penn Public Service Co. v. Albey (C. C. A.) 31 F.(2d) 85. The very foundation of such doctrine, however, is knowledge and appreciation of the danger. It does not include risks "arising from the noncustomary, unknown, and not to be anticipated negligence of a fellow servant." Brock v. Mobile & O. R. Co., 330 Mo. 918, 51 S.W.(2d) 100, 109; Montgomery v. Baltimore & O. R. Co. (C. C. A.) 22 F.(2d) 359, 360; Chesapeake & O. R. Co. v. Proffitt, 241 U. S. 462, 36 S. Ct. 620, 60 L. Ed. 1102; Chicago, R. I. & P. R. Co. v. Ward, 252 U. S. 18, 40 S. Ct. 275, 64 L. Ed. 430.

The evidence in this case does not establish as a matter of law that appellant knew that the engine was being run on the time of train No. 4. The appellant testified that he had in his possession a copy of the time table showing the time when No. 4 was due out of Jewett, and that he was required, under the rules of the company, to be familiar with its contents, but that as a matter of fact he did not know when that train was due to leave Jewett. He testified that he was depending on the conductor, who was primarily in charge of the train, to look after the schedule of the train and to arrange for meeting No. 4. We cannot say that the evidence establishes as a matter of law that the appellant knew that the engine was running on the time of train No. 4.

The doctrine of assumed risk is also applied in those cases where the servant creates the dangerous situation which brings about his own injury. Davis, Agt., v. Castile (Tex. Com. App.) 257 S. W. 870. The appellant, however, did not create the dangerous situation in this case. He merely failed to discover, and to protest against, a violation of the rules of the company by the conductor.

We do not think that the evidence in this case justified an instructed verdict for appellee. The judgment of the trial court is reversed, and the cause remanded for a new trial.