GERTRUDE MOONEY, Administratrix of the Estate of NEIL P. MOONEY, Deceased, v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Appellant.—No. 38122.—176 S. W. (2d) 605.

Division Two, January 3, 1944.

*Carleton S. Hadley, Arnot L. Sheppard* and *Joseph A. McClain, Jr.,* for appellant.

246

248

*Wilbur C. Schwartz* and *Chelsea O. Inman* for respondent.

252

ELLISON, J.—The respondent administratrix recovered judgment for $35,000 damages against the appellant Railroad Association under the Federal Employers' Liability Act, for the negligent killing of her husband, the intestate, while he was working as a switchman in appellant's freight yard in St. Louis. The cause was argued in this Division and an opinion delivered in March of this year. That opinion held the cause was and could be properly submitted under the Missouri humanitarian doctrine, but reversed and remanded it for procedural errors, these being improper cross-examination by respondent's counsel of her own witnesses; improper argument by her counsel; and excessiveness of the verdict attributable thereto.

In July a rehearing was granted on the court's own motion. New briefs were filed and the case has been reargued. Appellant reiterates its assignments of the alleged procedural errors and asserts no case

was made for the jury either under the last chance doctrine or our humanitarian doctrine. But the main assignment is that a suit brought under the Federal Employers' Liability Act cannot be based on the Missouri humanitarian doctrine, because, as against contributory negligence, the Federal Courts recognize only the last chance doctrine, which is essentially different. We discuss that assignment first, after stating the facts as briefly as possible.

The train movement involved was a flying switch whereby a boxcar was to be shunted from one to another of two parallel tracks spaced about 10 feet apart, over a connecting track. After having gathered sufficient momentum the speed of the switch engine, running backward and ahead of the connected boxcar, was first checked so it could be uncoupled, and then accelerated so the engine would clear the switch before the boxcar reached it. Thence the engine proceeded on the same track. By the throwing of the switch the slower moving boxcar would have been diverted to the other parallel track on its own momentum. The deceased had walked ahead to find a chock block, which he intended to insert under a wheel of the boxcar after it had come to a stop. Apparently while searching for the block, he first went straight ahead and then detoured into the course of the approaching locomotive with his back to it and was struck, dying a few hours afterwards.

As the locomotive passed the switch stand the switch foreman saw the deceased walking semi-circularly into peril. He endeavored to signal and call the engineer but was unable to attract his attention. The engineer was looking east, the direction in which the deceased had gone. In his excitement the foreman failed to throw the crossover switch, in consequence of which the boxcar continued on the same track, following the engine. Nobody was riding on it. The deceased was about 10 feet from the track on which the engine was advancing, when the foreman signaled the engineer, and the engine was 80 or 90 feet away from the point of collision—the nearest part of it perhaps 75 feet. About 35 feet further on the engineer saw the foreman's ''washout'' signal while the engine was moving about 15 miles per hour (22 feet per second). He made an emergency stop in about 25 feet. The boxcar overtook the engine and ''kicked up against'' it. The engine bell had been ringing all the time.

The engineer said he did not see the deceased before the casualty. There is no dispute about the fact that visibility was good. The deceased had been thrice warned of the intended train movement and acknowledged the warnings. There was substantial evidence of an established custom for appellant's engineers to keep a lookout, so far as possible, for switchmen on or near the tracks; but no direct evidence that the deceased knew of it. It did appear, however, that he had worked for appellant 2½ years on the extra board, the last year averaging 6½ days per month. The engineer and switch foreman had

worked for appellant over 30 years. The appellant stood on a demurrer to respondent's evidence.

There were a number of assignments of primary negligence in respondent's petition, and one framed on the theory of the Missouri humanitarian doctrine. But she submitted her case solely on an instruction authorizing a recovery on the aforesaid custom and the alleged humanitarian facts: that the deceased was oblivious and in a position of imminent peril; that the engineer knew, *or* should have known, of that peril; that he could thereafter, by the exercise of ordinary care with the means and appliances at hand and with safety to himself and the train crew, have stopped the engine and thereby prevented the casualty; but that he failed to do so, thereby directly causing the death of the deceased. The appellant's answer was a general denial.

Appellant maintains this instruction was erroneous and that respondent failed to allege and prove facts making a submissible case under the Federal Employers' Liability Act, for the following reasons. First, it argues the purpose of the Act was to establish uniformity of rights and remedies in the several states for injured employees of interstate railroad common carriers, superseding all conflicting and diverse state laws. We agree that this is true.[1] Next it asserts that the interpretation of the Federal statute by Federal decisions is controlling; and that we cannot whittle down the rights of either party thereunder by the application of state laws or decisions, notwithstanding the holding in Erie Rd. Co. v. Tompkins, 304 U. S. 64, 82 L. Ed. 1188, 58 S. Ct. 817, 114 A. L. R. 1487. We agree to that, also.[2]

Starting with those premises appellant maintains that respondent wholly failed to make a cognizable showing because she attempted to plead and prove a case under the Missouri humanitarian doctrine, whereas the Federal courts, in cases showing negligence on the part of the injured person, recognize only the last chance doctrine which is fundamentally different. The differences pointed out are: (1) that the last change doctrine is founded on the hypothesis of *discovered* peril, while the humanitarian doctrine, as invoked here, is satisfied by a showing of reasonably *discoverable* peril only; (2) under the last chance doctrine the negligence of the injured party must have ceased, leaving him unable to save himself but still affording the defendant a *last chance* to avert the casualty, whereas the humanitarian

[1]C., M. & St. P. Ry. Co. v. Coogan, 271 U. S. 472, 474, 70 L. Ed. 1041, 46 S. Ct. 564; N. Y. C. Rd. Co. v. Winfield, 244 U. S. 147, 150, 61 L. Ed. 1045, 37 S. Ct. 546.
[2]Erie Rd. Co. v. Tompkins, supra, 304 U. S. l. c. 78, 82 L. Ed. 1188, 58 S. Ct. 817, 114 A. L. R. 1487; Garrett v. Moore-McCormack Co., 317 U. S. 239, 245, 87 L. Ed. 186, 63 S. Ct. 246, 251; Sola Elec. Co. v. Jefferson Elec. Co., 317 U. S. 173, 176, 87 L. Ed. 150, 152, 63 S. Ct. 172, 174; B. & O. Rd. Co. v. Kepner, 314 U. S. 44, 52, 86 L. Ed. 28, 33, 62 S. Ct. 6, 10; Dietrick v. Greaney, 309 U. S. 190, 200-1, 84 L. Ed. 694, 701, 60 S. Ct. 480, 485.

doctrine permits the negligence of the injured party to continue up to the moment of his injury, as it did in this case.

Respondent argues to the contrary that under the express terms of the Federal Employers' Liability Act the defendant railroad is liable for its own negligence regardless of whether the contributory negligence of the injured person was actually discovered or merely reasonably discoverable; and also regardless of whether that contributory negligence had ceased so that the defendant had a last chance to avert the casualty, or whether it continued actively up to the event. In other words respondent maintains the contributory negligence does not defeat the *right* of recovery, but affects only the *amount* of recovery. We think this latter view is correct. After sketching the Act we shall review appellant's citations.

Section 51 of the Federal Employers' Liability Act, 45 U. S. C. A., p. 118, provides (italics ours) that every common carrier by railroad engaged in interstate commerce shall be liable in damages to any person suffering injury while employed by it in, or in furtherance of or substantially affecting, such commerce, (or to his personal representative if the injury proves fatal) "for such injury or death resulting *in whole or in part* from the negligence of" the carrier, its officers, agents or employees. Sec. 53, id. p. 610, provides that in cases under the Act "the fact that the employee may have been guilty of contributory negligence shall *not bar* a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." And Sec. 54, id. p. 695, as amended in August, 1910, completely bars the defense of assumption of risk (including the fellow servant rule) when the injury or death resulted *in whole or in part* from the negligence of the carrier. There is nothing on the face of these sections warranting a construction that the contributory negligence of the deceased *will* bar a recovery if not timely discovered or if continued up to the moment of his injury. They say the opposite.

But looking to appellant's citations. The Chunn and Ellzey cases[3] both do support appellant's theory that a negligent plaintiff cannot recover against a negligent defendant unless the latter had a *later opportunity* to avert the accident. They do not, however, commit the United States Supreme Court to the requirement of *discovered* peril. The Swartzel case[4] enforced both those requirements. But neither of these three cases was based on the Federal Employers' Liability Act. The Walker case,[5] does not mention the Federal Employers' Liability Act, but may have been under it. The facts, briefly, were that a

---

[3]Chunn v. City and Suburban Rv. Co., 207 U. S. 302, 309, 52 L. Ed. 219, 28 S. Ct. 63; K. C. So. Ry. Co. v. Ellzey, 275 U. S. 236, 240-242, 72 L. Ed. 259. 48 S. Ct. 80.

[4]Penna. Rd. Co. v. Swartzel, 17 Fed. (2d) 869, 870.

[5]Iowa Cent. Ry. Co. v. Walker, 203 Fed. 685, (certiorari denied, 231 U. S. 746, 58 L. Ed. 464, 34 S. Ct. 319).

freight engine struck from behind a baggage man pushing a baggage truck along a station platform close to the track. This decision expressly applied the discovered peril rule, but seemingly did not require a cessation of contributory negligence by the injured party.

The fifth citation is the Brennan case, decided in 1940.[6] That action was expressly under the Federal Act. A switchman at night had negligently failed to discover that a derailing block on a switch track had not been swung off the rail, as a result of which he was injured by the overturning of a boxcar that struck it. He sued, claiming there was still time for the engineer to stop the cars after he had felt the impact of the derailment, by a prompt application of the emergency brakes. The circuit court of appeals held that if this had been proven the plaintiff would have been entitled to recover under the last chance doctrine, however labeled; but ruled that under the evidence such a contention was merely speculative, and reversed plaintiff's judgment outright. We find no applicable principle announced here except that a plaintiff under the Federal Act *can* sue and recover on the last chance theory if he proves last chance facts. And of course the converse is true, that if he does rely on that doctrine but fails to prove facts bringing him within it he cannot recover. St. L. S. W. Ry. v. Simpson, 286 U. S. 346, 76 L. Ed. 1152, 52 S. Ct. 520.

The last case cited is Toledo, St. L. & W. Rd. Co. v. Allen, 276 U. S. 165, 172-3, 72 L. Ed. 513, 48 S. Ct. 215, decided in 1927. It was under the Federal Employers' Act and, like the present case, involved an injury sustained by a railroad employee from the switching of cars in a freight yard. The petition stated a case of discovered *or* discoverable oblivious peril, as under the Missouri humanitarian doctrine (though the casualty occurred in Illinois). The appellant railroad contended the evidence was insufficient to warrant a determination of "that issue" in favor of the plaintiff. There was no contention that the petition failed to state a cause of action. The United States Supreme Court reviewed the evidence on the merits, and held there was (italics ours) "no evidence to sustain the allegation that the other employees saw, *or negligently failed to discover*, plaintiff in a 'position of peril and oblivious thereof.'" It is to be noted that this issue was not ruled on the ground that the oblivious plaintiff could not recover because he had been guilty of active, continuous, contributory negligence.

Looking to respondent's cases, these same questions were presented to the United States Supreme Court in a cause originating in this state in 1932, Moran v. A. T. & S. F. Ry. Co., 330 Mo. 278, 284, 48 S. W. (2d) 881, 882(1-3). The action was under the Federal Act and the petition was framed on the humanitarian theory. The railroad company contended that under Federal decisions such suits

---

[6]Brennan v. B. & O. Rd. Co., 115 Fed. (2d) 555, (certiorari denied 312 U. S. 685, 85 L. Ed. 1123, 61 S. Ct. 614).

must be founded on the last chance doctrine, not the humanitarian doctrine; and that a negligent defendant will not be held liable to a negligent plaintiff unless the former had a later opportunity to avert the casualty (citing the Ellzey case, supra). This court unanimously held to the contrary (there was a dissent on another non-federal question) and certiorari was denied. 287 U. S. 621, 77 L. Ed. 539, 53 S. Ct. 21.

The question was squarely ruled by this court. After referring to the provision in Sec. 51 of the Federal Employers' Liability Act allowing the plaintiff to recover for injuries ''resulting in whole or in part'' from the negligence of the carrier; and to the provision of Sec. 53 that the contributory negligence of the employee ''shall not bar a recovery'' but merely diminish the damages, the decision said: ''This statute does not make the liability of the carrier contingent upon its negligence occurring *later in point of time* than the negligence of the plaintiff. . . . We interpret the statute to mean that the negligence of a plaintiff *however late in point of time and however directly connected with the injury,* does not defeat a cause of action under the statute—if the defendant's negligence remains a proximate contributing cause. . . . Without doubt it comprehends *any negligence* of the defendant causing or proximately contributing to the injury, *whether antecedent or subsequent* to the negligence of the plaintiff.''

We think two recent Federal decisions sustain the foregoing view. They are: Tiller v. Atlantic Coast Line Rd. Co., 318 U. S. 54, 65-7, 87 L. Ed. 446, 63 S. Ct. 444, and Owens v. U. P. Rd. Co., 319 U. S. 715, 87 L. Ed. 1221, 1224-5, 63 S. Ct. 1271, 1274-5. Both construe the Federal Act searchingly. The Tiller case declares the Act and its 1910 amendment, ''aimed at making the principles of comparative negligence the guiding rules of decision in accident cases''; and that they: (parenthesis ours): ''authorize comparison of negligence instead of barring the employee from all recovery because of contributory negligence. They leave for practical purposes only the question of whether the carrier was negligent and whether that negligence was the proximate (not the sole) cause of the injury.'' Both the Tiller and the Owens case further point out that the 1910 amendment of Sec. 54—barring the defense of assumption of risk—also eradicated such phases of the *defense* of contributory negligence as had persisted in the guise of assumed risk.

We do not question the holding in the Brennan case, supra, that if a plaintiff brings his suit under the Federal Employers' Liability Act on the last chance theory, he can recover provided he proves that *kind* of negligence. But by so doing he restricts the range of his assertable cause of action, if the defendant was guilty of further actionable negligence. And the same is true of our humanitarian doctrine. Freeman v. Berberich, 332 Mo. 831, 837 (3), 60 S. W. (2d) 393, 395 (3). That case holds a plaintiff may recover under that doctrine

although he was not guilty of any contributory negligence (and consequently could have sued also for any primary negligence of the defendant proximately causing his injury).

There can be no doubt about the fact that the rationale of the humanitarian doctrine originally was to afford a negligent plaintiff a remedy *in spite of* his contributory negligence. But regardless of nomenclature, even though a plaintiff did sue in that way, tacitly confessing his own contributory negligence, certainly his cause of action would not be prejudiced even though it should develop that he was innocent of contributory negligence. Sec. 92, A. L. R. Annotation, p. 48. His right of recovery would merely be limited to the defendant's negligence as he had pleaded it. This is especially true since the ruling in Banks v. Morris & Co., 302 Mo. 254, 267, 257 S. W. 482, 484 (1), that an imperiled plaintiff may recover under the humanitarian doctrine regardless of the cause of his peril. And by analogy the same should be true when a humanitarian petition is filed in an action under the Federal Employers' Liability Act, which latter *withdraws* the plaintiff's contributory negligence as a *complete* defense just as effectively as if it had not been proven. And so we hold, on this assignment, that respondent's petition properly supported her cause of action.

The next assignment is that respondent's evidence did not make a prima facie case under Sec. 51 of the Federal Act on either the last chance or humanitarian theory, because the train crew were under no duty to look out for the deceased while he was switching cars in appellant's freight yard; and since there was no duty, the failure to look was not negligence. As an abstract proposition this contention was supported by former decisions of the United States Supreme Court.[7] But insofar as that rule is a branch of the doctrine of assumption of risk, it was abolished by the 1910 amendment of Sec. 54, supra. In fact the Tiller case, supra, (318 U. S. 1. c. 66) says the Toledo-Allen case, reviewed above, was the principal target at which that amendment was aimed. But the Owens case, supra (63 S. Ct. 1. c. 1275, secs. 6, 7) holds the doctrine of assumption of risk still remains, to whatever extent the deceased may have anticipated and taken the chance of the *particular* risk created at the time by the negligence of his fellow employees. And the opinion states there was evidence in that cause of a custom for the switching crew to look out for each other, particularly when a switchman was not in sight during switching operations, which made the question of assumption of the particular risk one for the jury.

There was also such evidence in the instant case. Appellant's engineer who figured in the casualty testified it had always been the

---

[7] Toledo, St. L. & W. Rd. Co. v. Allen, supra. 276 U. S. 1. c. 171-2. 72 L. Ed. 518, 48 S. Ct. 215; Aerkfetz v. Humphreys, 145 U. S. 418, 420, 36 L. Ed. 758, 12 S. Ct. 835.

custom for the engineer to look in the direction in which the engine was moving for persons who might be on the track or approaching the track—and he had worked there for 30 years. Another witness was a retired switchman who had worked for appellant between 1923 and 1929. He testified that during those six years the custom in appellant's yard required the engineer of a switching crew to keep a lookout for anything that would be on the track in front of his engine; and to ascertain whether the various members of the crew were in the positions assigned to them for a contemplated switching movement. Appellant argues this testimony was insufficient to make a prima facie case that the custom was definite, uniform, known to the switching crew—particularly the deceased—, and that it applied to flying switches. We think otherwise. The deceased had worked for appellant as a switchman for 2½ years, and it is a reasonable inference that within that time he would have become acquainted with the custom shown.[8] We rule this assignment against appellant.

Appellant assigns next that on the merits respondent failed to make a submissible case because the facts conclusively show the engineer was not guilty of negligence. In making the flying switch the locomotive was about 30 feet west of the crossover switch when it checked its speed so the boxcar could be uncoupled. That meant sufficient speed had been imparted to the boxcar to make it run on its own momentum that distance of 30 feet, plus 162 feet, the length of the crossover switch, plus a sufficient distance to get in the clear on the other parallel track. It would seem from this that the freight car had attained enough speed to propel itself slightly up-grade for perhaps 300 feet. Then the locomotive speeded up said distance 30 feet and its own length in order to clear the switch and get out of the way of the boxcar, and continued thence on its original track.

Without doubt there was much to claim the engineer's attention in a very short time: slowing up his locomotive; speeding it up again; watching the switchman on the engine footboard who uncoupled the boxcar; watching the switch foreman who was to throw the switch; hurrying the locomotive past the switch; watching to see if the boxcar turned off; keeping out of its way if it did not, in order to avoid the collision that later actually occurred. The deceased was further on eastwardly and normally would have been out of harm's way. He had been warned of the switching movement; visibility was good; and he had no duties in connection with the locomotive. We would be loath to convict the engineer of negligence if he had *not* looked to the east for

[8]Finley v. St. L.-S. F. Ry. Co., 349 Mo. 330, 339, 160 S. W. (2d) 735, 739(7); Evans v. A.. T. & S. F. Ry. Co., 345 Mo. 147, 156-7, 131 S. W. (2d) 604. 608(9-10); Mitchell v. Wabash Ry. Co., 334 Mo. 926. 939(7), 131 S. W. (2d) 286, 291-2(7); Armstrong v. M. & O. Rd. Co., 331 Mo. 1224, 1238(3), 55 S. W. (2d) 460. 465(5-8); O'Donnell v. B. & O. Rd. Co., 324 Mo. 1097, 1106(I), 26 S. W. (2d) 929, 933(1-6).

the deceased. But he *did* look. He, himself, testified that he looked east to see if he had a clear track, after the boxcar was uncoupled and again when he was between 5 feet west and 25 feet east of the switch stand. The switch foreman testified that as the locomotive cab was passing the switch stand the engineer was glancing or looking from the west to the east. At that time the switch foreman had apprehended the danger and was trying to warn the engineer, who did not get the warning until he had gone 25 feet further and caught the signal from both the foreman and the switchman on the back footboard.

We think these facts raised an issue for the jury, though the question is close and ultimately a Federal question.[9] The respondent did not submit the case on a negligent failure on the part of the engineer to sound the whistle, but only on a negligent failure to *stop*. And we must remember the unmanned boxcar was following the locomotive down the same track at a speed that would carry it perhaps 300 feet on its own momentum. The sooner the locomotive stopped the more violent would be the collision between the two; and it may be a sudden stop could not have been safely made in time to prevent the casualty. But this point is not stressed in the briefs, and while a collision actually did occur, yet it does not appear that it was violent. So we rule this assignment against the appellant.

As to the procedural errors assigned. Since the railroad engineer and switch foreman were the only real eyewitnesses of the casualty the respondent was compelled to use them as witnesses. She had previously taken their depositions. During their direct and re-direct examination her counsel several times used the depositions in cross-examining them on particular matters, by calling the witness' attention to supposedly inconsistent statements in the depositions. The railroad engineer also was asked if he had talked to respondent's counsel before giving his deposition, and whether he understood the English language. Appellant complains of this as unfair, theatrical, prejudicial and impeachment of respondent's own witness, but cites no authorities. It is the general rule, of course, that a litigant by calling a person as a witness vouches for his credibility and will not be permitted to cross-examine or impeach him, except in case of entrapment. But a further exception has been allowed where the witness is hostile to his sponsor litigant—and this ought to be especially true where that litigant had no alternative and was forced to call him. The exception entrusts the range of the cross-examination to the reasonable discretion of the trial court.[10] We think a rather wide range of cross-examination was allowed to respondent's counsel in this in-

[9]Brady, Admx., v. So. Ry. Co.. 64 S. Ct. 232, (Dec. 20, 1943).
[10]Burnam v. C. G. W. Ry. Co., 340 Mo. 25, 42, 100 S. W. (2d) 858, 867(11); Schipper v. Brashear Truck Co. (Mo. Div. 1), 132 S. W. (2d) 993, 1000(16), 125 A. L. R. 674, 684.

stance. But we shall not discuss the facts in detail since the cause must be reversed and remanded on the next assignment, and the error probably will not recur again.

■ That assignment concerns errors in the argument to the jury. We have already expressed the opinion that the case was close on the facts, at best. In his closing argument counsel for respondent elaborately ■ challenged the credibility of the testimony of the railroad engineer (his own witness) that he did not see the deceased before the collision. Counsel declared the view was unobstructed and said of the engineer, "but he'd have you believe that suddenly the earth opened up . . . and swallowed Neil Mooney" (the deceased). Then counsel asked why the switch foreman had warned the deceased three times "to look out for that train." Several objections were made and overruled, and then counsel asserted (italics ours): "There is no doubt but what this is a case of negligence, no doubt about that. There is no doubt in my mind *or the Court's* mind that the case can be submitted to you as a question of fact for the jury to be passed—."

Appellant's counsel objected. Respondent's counsel answered that he had only said it was a question of fact to be passed on by the jury. Then he withdrew the remark. The Court sustained the objection; but appellant's counsel asked a mistrial, saying a rebuke would be insufficient. The Court overruled the motion for mistrial, but instructed the jury to disregard the unfinished remark of respondent's counsel "in which he said something about the Court's mind," and added: "Counsel has no right to tell you what is in the Court's mind." (A ruling difficult to phrase; and dubious at best, indicating the court may have had an opinion on the question.)

In McGowan v. Wells, 324 Mo. 652, 666(IV), 24 S. W. (2d) 633, 639(9), this same counsel made a similar argument to a jury, telling them if the court thought the plaintiff didn't have a case the court would take the case from the jury. Opposing counsel moved for a reprimand, for instructions to disregard the statement, and for a mistrial. The court gave the instruction to disregard whereupon present counsel resumed, almost exactly as here: "If there were not a question of fact for the jury to pass on, the case would not have been submitted to the jury. Now that is the law. There is a question of fact here." Again the court instructed the jury to disregard the remark, but overruled the motion for mistrial.

The cause was reversed for that very reason, the opinion saying: "For counsel in argument in any guise or form to tell the jury what the court thinks about the sufficiency of the evidence for any purpose is highly improper, as every lawyer well knows. Its effect on the jury in a close case can hardly be doubted." In so holding, the McGowan case followed Neff v. City of Cameron, 213 Mo. 350, 369, 371, 111 S. W. 1139, 1145, 18 L. R. A. (N. S.) 320, 127 Am. St. Rep. 606, where a lawyer in closing argument called the jury's attention

262

to the fact that opposing counsel had been making repeated objections and had been overruled. An objection to the remark was not ruled on. The opinion, by LAMM, J., held the remark was equivalent to saying, "We have the court with us," and then added: "That was a mischievously unfair argument and the court in its own dignity and right should have stopped counsel even though no objection was made."

For this error in the argument the cause is reversed and remanded. All concur.