ATLANTIC COAST LINE RAILROAD
COMPANY, Appellant,

v.

Ethel ANDERSON, as Administratrix of
the Estate of James Lester Anderson,
deceased, Appellee.

No. 17121.

United States Court of Appeals
Fifth Circuit.

May 21, 1959.

Rehearing Denied June 17, 1959.

**330**

Clark W. Toole, Jr., Louis Kurz, Kurz & Toole, Jacksonville, Fla., for appellant.

William M. Howell, Thomas A. Larkin, Jacksonville, Fla., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and JONES, Circuit Judges.

JONES, Circuit Judge.

The appellant railroad operated through Chiefland, Florida, where its line of rail lies in a north-south direction. James Lester Anderson was employed by the railroad as a flagman. On the early morning of June 15, 1955, the railroad's train designated as Work Extra No. 225, was engaged in switching cars loaded with watermelons at Chiefland. Anderson was assigned to this train. In the protection of the work train he was directed to flag down a southbound train and a northbound train. He flagged the southbound train at approximately 1:30 a. m. The appellant's trainmaster then took Anderson some distance by automobile to a road crossing south of the work train. The trainmaster instructed Anderson to place torpedoes on the track and then walk north about 1,500 to 2,000 feet and there flag the northbound train No. 236. Anderson had such signal equipment as was needed. His lantern was lit when he started out. The torpedoes were placed and Anderson went on to the place where the train was to be flagged. There he was struck by the train which he was to flag. He was totally and permanently disabled physically, unable to speak, and incapable of any activity, physical or mental. He sued the appellant by his guardian under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. There were three counts of the complaint, each based on different theories of liability. By the first count it was alleged that Anderson was struck by the train while he was in the process of flagging. The second count stated that he was sitting on the track when struck by the train. The third count was based upon the charge that the train was then negligently being operated at a dangerously high rate of speed. In each count it was asserted that there was negligence in the operation of the train in failing to heed the warning of the torpedoes, in failing to heed the warning of a lantern or fusee signal, and in failing to reduce speed after being warned. The appellant denied any negligence on its part and asserted that the negligence of Anderson was the sole proximate cause of his injuries. The case was tried before court and jury. The appellant's motion for a directed verdict was denied. The jury returned a verdict for the plaintiff in the amount of $115,000. Motions for a judgment notwithstanding the verdict and for a new trial were denied. Judgment was entered on the verdict and from the judgment the appellant has appealed. While the appeal was pending Anderson died. His administratrix has been substituted as a party to the appeal.

The evidence was in conflict as to some of the occurrences after Anderson reached the place where he received his injuries. From testimony for the appellant it appeared that the train was going 40 or 41 miles per hour as it reached the torpedoes. The appellee draws an inference that the train was doing 45 or 46 miles per hour. The evidence of the appellant was that the speed of the train was reduced by about five miles an hour to approximately 35 miles an hour after hitting the torpedoes. The appellant's foreman testified

that there was no lighted fusee or lantern showing. The engineer was dead at the time of the trial. For the plaintiff there was testimony of a witness who lived near the track that there was a glow at a time when he heard the train coming and the glow was from a fusee. The trainmaster, after hearing the explosion of the torpedoes, saw a red glow which he took to be Anderson's fusee. The fireman testified that he saw Anderson sitting on a rail of the track when the train was a distance of 150 to 200 feet away. He called to the engineer who applied the emergency brakes but it was impossible to stop in such a distance.

The court instructed the jury as to the rules governing negligence and as to the doctrine of contributory negligence. Among the lengthy instructions was the statutory comparative negligence provision that "The fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." 45 U.S.C.A. § 53. The court also gave an instruction on the last clear chance doctrine in which, among other things, the jury was told "If you find then that the defendant Railroad had the last clear chance of avoiding injury to James Lester Anderson, notwithstanding the prior or antecedent negligence of Mr. Anderson, he is entitled to recover damages undiminished by any degree of negligence or fault which may have been his because, in law, the one who has the last clear opportunity of avoiding injury is considered solely responsible for it." This was emphasized by the court when the jury, after retiring, returned for further instructions on last clear chance.

Our attention is first directed by the appellant to its contention that the trial court committed error in not granting its motion for a directed verdict on the ground that it did not commit any negligent act which was a contributing cause to Anderson's injury. As the Supreme Court has said:

"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence." Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 524, 559, 77 S.Ct. 443, 448, 459, 478, 1 L.Ed.2d 493, 515, rehearing denied 353 U.S. 943, 77 S.Ct. 808, 1 L.Ed.2d 764. See Webb v. Illinois Central Railroad Company, 352 U.S. 512, 521, 77 S. Ct. 451, 459, 1 L.Ed.2d 503, 515, rehearing denied 353 U.S. 943, 77 S.Ct. 809, 1 L.Ed.2d 764; Moore v. Terminal Railroad Association, 358 U. S. 31, 79 S.Ct. 2, 3 L.Ed.2d 24.

We do not think it can be said that there was no evidence of negligence of the appellant which might have, in some measure, played a part in producing the injuries to Anderson. The motion for a directed verdict, the motion for a judgment notwithstanding the verdict, and the motion for a new trial on the ground of absence of substantial evidence of negligence on its part were properly overruled.

The appellant asserts that there was prejudicial error in giving the jury the charge on last clear chance. The contention is made that the last clear chance doctrine is inapplicable where the comparative negligence rule has been adopted. It is said, with much logic in the saying, that the last clear chance doctrine casts upon the defendant the entire liability for damage resulting from the fault of both plaintiff and defendant; a liability which, under the comparative negligence rule, should be apportioned in accordance with the degree of fault. See Prosser, Handbook of Torts, 2d Ed. 292;

2 Harper & James, Torts, 1251–1252, N. 26; MacIntyre, Rationale of Last Clear Chance, 53 Harv.L.Rev. 1225, James, Last Clear Chance: A Transitional Doctrine, 47 Yale L.J. 704. The retention of the last clear chance doctrine after the adoption of the comparative negligence rule has been called "absurd". 33 Can.B. Rev. 257. The Florida Supreme Court has recently held that the doctrine of last clear chance does not apply in comparative negligence cases and expressly overruled its earlier decisions holding otherwise. Loftin v. Nolin, Fla., 86 So.2d 161, 59 A.L.R.2d 1257. The Supreme Court of the United States has not, so far as we are aware, expressly ruled upon the applicability of the last clear chance doctrine in an FELA case. It has considered the doctrine in such cases. See St. Louis Southwestern Railway Co. v. Simpson, 286 U.S. 346, 52 S.Ct. 520, 76 L.Ed. 1152. Whether generally applicable or not in comparative negligence cases, we conclude that the last clear chance doctrine has no application in this case.

▮▮▮▮ After stating the last clear chance doctrine in somewhat technical terms, the Court, in its charge, continued:

"Now, the effect of that rule means simply this: There's a lot of big words in here; I think I'd better try to bring it down a little in focus in a little more easily understood language. It means that a plaintiff who is negligent in the first instance may recover from a negligent defendant if that negligent defendant had knowledge, or in the exercise of due care should have had knowledge, of the plaintiff's peril, and in fact had opportunity thereafter by the exercise of due care to avoid injury to the plaintiff. In other words, applying it, bringing it down to the facts in this case, if through his own negligence or inattention or for any other reason Mr. Anderson did sit on the track there where he was in a position of peril and he got there by his own fault or negligence, if in the exercise of reasonable care the defendant Railroad Company, or its agents, discovered, or could have discovered, his peril in time to have done something to have avoided injury, then the law says, 'You had the last chance; you had the last clear chance. It was within your power to avoid injuring this man and your negligence is the sole proximate cause.' So that's all that the last clear chance doctrine means. It means that the person having the last clear chance of avoiding an accident is responsible for the accident. If Mr. Anderson was asleep, or sick, or under some sort of a seizure there on the track where he was in a position of peril, and if this train crew saw him there or if by the exercise of reasonable care they should have seen him there and thereafter had time to avoid injuring him, then the Railroad Company is liable under the last clear chance doctrine."

This would render the appellant liable if it could, in the exercise of due care, have discovered the peril in time to have avoided the accident. Such is the rule in some, perhaps a majority of jurisdictions where the plaintiff was in a position of peril from which he could not extricate himself. 2 Harper & James, Torts, 1248. But in other cases the application of the doctrine is limited to situations where the peril was actually discovered. The evidence that Anderson was not discovered until too late to avoid hitting him is not controverted. The Court of Appeals of New York adopted the view that actual knowledge of the peril was required in order to bring last clear chance into play. That court, speaking through Chief Justice Cardozo, said:

"The doctrine of the last clear chance, however, is never wakened into action unless and until there is brought home to the defendant to be charged with liability a knowledge that another is in a state of present peril, in which event there must be a reasonable effort to counteract the

peril and avert its consequences. Wright v. Union Ry. Co., 224 App. Div. 55, 229 N.Y.S. 162; Id., 250 N. Y. 526, 166 N.E. 310. Knowledge may be established by circumstantial evidence, in the face even of professions of ignorance (cf. Bragg v. Central New England Ry. Co., 228 N.Y. 54, 126 N.E. 253), but knowledge there must be, or negligence so reckless as to betoken indifference to knowledge." Woloszynowski v. New York Central Railroad Co., 254 N.Y. 206, 172 N.E. 471, 472.

The Supreme Court of the United States, in an opinion by Mr. Justice Cardozo, approved, cited and followed, in an FELA case, the principle which had been announced in the New York decision. In the Supreme Court opinion it was stated:

"We do not need to inquire whether a different conclusion would follow if the conductor in the caboose had discovered that the engineer had gone upon the main track through a misunderstanding of a later order, and, discovering this, had failed after a substantial interval of time to give warning of a peril that he could have easily averted. Nothing of the kind appears. There is an absence of the essential factors that wake into life the doctrine of the last clear chance. In the first place, the conductor did not know any more than Simpson did that an order had been violated. He was distrustful of his memory, and was looking at the written orders at the moment of the collision. Negligent he may have been, but not recklessly indifferent to a duty to counteract a peril perceived and understood." St. Louis Southwestern Railway Co. v. Simpson, supra [386 U.S. 346, 52 S. Ct. 521]. See Atchison, T. & S. F. Ry. Co. v. Taylor, 8 Cir., 1912, 196 F. 878; Iowa Cent. Ry. Co. v. Walker, 8 Cir., 1913, 203 F. 685, certiorari denied 231 U.S. 746, 34 S.Ct. 319, 58 L.Ed. 464.

In an FELA case there must be a discovery of the peril before last clear chance comes into play. It is not enough that the peril might have been discovered by the exercise of reasonable care. The instruction given was erroneous and because of the error we reverse for a new trial.

 The appellant urges a reversal on the ground that the verdict and judgment for $115,000 are excessive to such an extent as to require a reversal. In a memorandum the district court stated that if the jury was incorrectly permitted to consider the last chance doctrine it would be disposed to enter a remittitur of $35,000. Of course, and this the district court recognized, the apportionment of damages under the comparative negligence rule is for the jury subject to review if excessive as a matter of law. As there is to be a new trial it becomes unnecessary to consider further the size of the verdict.

In order that there may be a new trial the judgment of the district court is

Reversed and remanded.